UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

JANICE BAXLEY HOSEY                              CIVIL ACTION NO. 3:05-1706

VERSUS                                          JUDGE ROBERT G. JAMES

M.L. SMITH, JR., INC.,  ET AL.                  MAG. JUDGE KAREN L. HAYES

RULING

This is an employment discrimination case brought by Plaintiff Janice Baxley Hosey

("Mrs. Hosey") against her former employer, Defendant M.L. Smith, Jr., Inc. ("Smith, Inc."), and

an employee of Smith, Defendant Billy Patton ("Patton").  Pending before the Court is a Motion

for Summary Judgment [Doc. No. 38] filed by Smith, Inc. and Patton.

For the following reasons, Smith, Inc. and Patton's Motion for Summary Judgment is

GRANTED IN PART and DENIED IN PART.

I.      FACTS

Smith, Inc. is an industrial construction contractor.  Patton is the Field Operations

Manager for Smith, Inc. and supervises all industrial construction work and the superintendents

of those job sites.

In 2002, Mrs. Hosey [1] began working for Smith, Inc. as a Fire Watch/Hole Watch

---

[1]When she was hired, Mrs. Hosey was known as Janice Burch.  After a divorce, she was known
by her maiden name, Janice Baxley.  Prior to filing suit, however, she married former Smith supervisor
Lamar Hosey and is now known as Janice Baxley Hosey.

Attendant ("Fire Watch").[2]  She was initially employed part-time at the Smurfit-Stone Container site in Hodge, Louisiana, and her employment ended with the completion of that job.  Mrs. Hosey was supervised by Oscar Hosey.[3]  Mrs. Hosey only saw Patton at the job site once.

In June 2003, Mrs. Hosey was re-employed as a Fire Watch and worked fairly consistently on Smith, Inc. jobs from that time until she was terminated.

In 2003, Smith Inc.'s Safety Director, Mark Shively ("Shively"), allegedly received two anonymous telephone calls from a man and a woman, both stating that Mrs. Hosey was using illegal drugs.  Some time during 2003, Shively subjected all employees to an unannounced drug test on-site at Green Bay Packaging in Morrilton, Arkansas.  However, employees were not required to provide the specimens under observation.  Mrs. Hosey passed the drug test.

In December 2003, Mrs. Hosey was working at the Rubicon job site in South Louisiana under the supervision of Lamar Hosey.

In early 2004, Stephanie Smith Harrison ("Harrison")[4], Smith, Inc.'s Secretary-Treasurer, allegedly received an anonymous call from a male who stated that Mrs. Hosey was using illegal drugs and that she was faking her drug tests.  She reported this call to Shively, who told her that he had previously received calls about Mrs. Hosey's alleged drug usage, but that she had passed two drug tests (her pre-employment test and the subsequent test at Morrilton).

Also in early 2004, Tammy Bailey ("Bailey"), a Fire Watch who was training to be an

---

[2]In this position, Mrs. Hosey was located in a confined space (with limited ingress and egress) and required to watch for unexpected fires caused by welding sparks.

[3]Oscar Hosey is Lamar Hosey's brother.

[4]In some pleadings, she is referred to as "Stephanie Smith," but, according to her deposition, her name is Stephanie Smith Harrison.  Harrison is the daughter of M.L. Smith, the founder of Smith, Inc.

assistant safety director, was on the Rubicon job site.  Bailey allegedly overhead Mrs. Hosey discussing with other female employees[5] that Smith, Inc. could not catch her with a drug screen. Because Patton was on the job site that day, Baily reported Mrs. Hosey's comments to him, rather than Shively, her supervisor.  The same day Patton reported this conversation to Shively.

While on the Rubicon job, Mrs. Hosey began a romantic relationship with Lamar Hosey. Some time during the job, Mrs. Hosey allegedly complained to Lamar Hosey about two incidents involving Patton.  In one incident, Patton propped his legs across Mrs. Hosey's path in the tool trailer or tool house, so that Mrs. Hosey had to step over him.  As she did, Patton put his leg between her legs and allegedly said, "I just wanted to see what kind of heat you had around your pussy."  In a second incident, Mrs. Hosey bent over to clean up welding rod butts.  When she raised up, Patton was standing behind her.  He put his arm around her and said, "you need to start wearing looser clothes or quit bending over in front of me because you make my dick hard." Mrs. Hosey also told Lamar Hosey about other inappropriate comments made by Patton.

At this time, Smith, Inc. had no written or verbal policy on sexual harassment.  Lamar Hosey did not report Patton's actions and comments to anyone at Smith, Inc.  He never personally observed any inappropriate actions by Patton towards Mrs. Hosey or any other women during Mrs. Hosey's employment with Smith, Inc.

The Rubicon job ended on March 8, 2004.  Shortly afterward, Smith, Inc. supervisor Ronnie McDonald ("McDonald"), who is on the safety committee, called Lamar Hosey. McDonald told Lamar Hosey that he and Mrs. Hosey, who had begun living with him, needed to

---

[5]Christy Reeves, Esther Oglesby, and Rachel Thomas were Mrs. Hosey's co-workers on the Rubicon job.  Esther Oglesby is Mrs. Hosey's mother.

travel to Smith, Inc.'s office in Ruston on Friday, March 18, 2004.  McDonald said that Mrs.

Hosey had to update some information required under the Mine and Mineral Heath Safety Act.

The Hoseys received other communications from Smith, Inc. to verify that they would be at the

office on March 18th.

On March 18, 2004, the Hoseys arrived at the Ruston office of Smith, Inc.  Shively

informed Mrs. Hosey that she was not there to provide information, but to be administered a drug

test under the observation of a lab technician from Kroll Laboratories.  He told her that the

company had received calls reporting her drug usage.  Mrs. Hosey agreed to the drug test.  The

lab technician followed Mrs. Hosey into the bathroom, but stayed in the room adjoining the

bathroom where she could observe Mrs. Hosey.  After Mrs. Hosey provided a specimen,

Harrison heard the lab technician tell Mrs. Hosey that the specimen was not acceptable because it

was "cold" or not the correct temperature.

At that point, Harrison told Mrs. Hosey that she would have to provide a second sample.

Mrs. Hosey claimed to have spilled urine on her pants and requested that she be allowed to go to

the truck and get dry pants.  She was allowed to do so, but was accompanied by another lab

employee.  Mrs. Hosey then gave another specimen approximately five (5) minutes later, which

allegedly tested positive for marijuana.

Following the tests, Mrs. Hosey came into Harrison's office and admitted that she had

smoked marijuana.[6]  Mrs. Hosey was suspended for thirty (30) days pending a decision on her

continued employment.  According to Mrs. Hosey, Shively assured her that once she served her

---

[6]In her deposition, Mrs. Hosey admitted that she had smoked unknown quantities of marijuana
during a two-day period a few days before the drug test. [Doc. No. 62, Deposition of Janice Hosey, pp.
54, 217].

30-day suspension she would still have a job with the company if she passed a subsequent drug test.

The next Smith, Inc. job was in Wyoming.  Mrs. Hosey traveled with Lamar Hosey to that job, but she was not permitted to work.

Harrison allegedly made the decision to terminate Mrs. Hosey's employment for "violation of legitimate work place rules."  Harrison testified that she decided to terminate Mrs. Hosey because she had attempted to fake her drug test by providing a cold urine specimen.  Mrs. Hosey denies that she provided a cold urine sample.

On August 20, 2004, Mrs. Hosey filed a verified charge with the Equal Employment Opportunity Commission ("EEOC") in Mississippi, alleging that she was subjected to a "sexually offensive work environment," that she was discriminated against on the basis of her sex, and that she was terminated in retaliation for rejecting Patton's sexual advances.

After Mrs. Hosey filed her EEOC charge, Lamar Hosey attended a meeting at the Smith office in Ruston with Scott Martin ("Martin"), the President of Smith, and Harrison.

On September 21, 2004, the EEOC issued a Notice of Rights to Mrs. Hosey.  She filed suit against Defendants on December 20, 2004, in the United States District Court for the Southern District of Mississippi, Hattiesburg Division.  In her Complaint, Mrs. Hosey asserted claims of sexual harassment, sexual discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and state law claims of intentional infliction of emotional distress, breach of contract, and wrongful discharge.

On September 15, 2005, acting on Defendants' motion, the Southern District of Mississippi transferred venue to this Court.

On February 16, 2007, Defendants filed the pending Motion for Summary Judgment.

After several extensions of time related to the health of Mrs. Hosey's counsel, Mrs. Hosey filed an opposition to the Motion for Summary Judgment on August 6, 2007.

Defendants filed a reply on August 21, 2007.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir.  1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  Id.  The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case.  Ashe v. Corley, 992 F.2d 540, 543  (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the court must

accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.

Anderson, 477 U.S. at 255.

     **B.**    **Title VII**

        **1.**     **Administrative Prerequisites**

     Generally, the limitations period for filing a charge of discrimination under Title VII is

180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).

The period is extended to 300 days in states that provide a state or local agency to address

complaints of employment discrimination.  See 42 U.S.C. § 2000e-5(e)(1).  These states are

known as deferral states, and states without such an agency are known as non-deferral states.

Mrs. Hosey timely filed her charge in Mississippi, a non-deferral state, on or about August 20,

2004, within 180 days of her March 18, 2004 30-day suspension and her subsequent termination

or failure to be re-employed.

     Defendants argue that Mrs. Hosey is time-barred from asserting claims based on any

conduct occurring outside the 180-day period or prior to February 22, 2004.  Mrs. Hosey

responds that Defendants' argument is "misplaced" because she has also timely alleged a sexual

harassment claim of hostile work environment.

     First, the Court notes that Mrs. Hosey properly filed a claim with the EEOC in

Mississippi, where she lives, even though most, if not all, actions about which she complains

took place in Louisiana.  The EEOC filing requirement is satisfied when the claimant files a

charge "at the offices of the [EEOC] in Washington, D.C., or any of its field offices or with any

designated representative of the [EEOC]."  29 C.F.R. § 1601.8.

Second, the Court further notes that it is unclear whether Mrs. Hosey's claims are subject to a 180- or 300-day limitations period.  In determining the applicable limitations period, the statutory and regulatory framework refer only to the state where an unlawful employment action occurred (i.e., Louisiana, a deferral state).  Even though Mrs. Hosey filed her charge of discrimination with the EEOC in Mississippi, the EEOC could have forwarded her complaint to the EEOC in Louisiana as the proper venue and/or to the Louisiana Commission on Human Rights pursuant to a worksharing agreement.  If so, Mrs. Hosey would receive the benefit of the 300-day period.  On the other hand, the charge itself has only the EEOC box checked, not the box indicating dual-filing with any state fair employment practices agency.  This fact suggests that Mrs. Hosey's claims are subject to the 180-day limitations period.  However, the Fifth Circuit has not addressed this issue, and the parties have not briefed it.

Having reviewed Mrs. Hosey's claim, the Court concludes that it need not determine which limitations period is applicable at this time.  As Defendants admit, Mrs. Hosey's charge was timely filed and encompasses her suspension and termination.  These are the only discrete acts upon which she bases her lawsuit.[7]

The remainder of Mrs. Hosey's Title VII claims are based on sexual harassment under a theory of hostile work environment and are also timely.  "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  Thus, as long as one act constituting part

---

[7]If the 180-day period is applicable, the Court recognizes that Mrs. Hosey could be barred from asserting additional claims of quid pro quo sexual harassment, such as, for example,  the denial of a raise when she refused to have sexual relations with Patton.  However, it does not appear that she is asserting any such claims at this time, but uses Patton's purported threat to her as evidence of her hostile work environment claim.  See [Doc. No. 64, pp. 7-8].

of, or contributing to, the hostile work environment occurred during the relevant time period, Smith, Inc. may be liable for the entire scope of conduct.  Id. at 118 ("Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim.  In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment."); see also id. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").  Mrs. Hosey alleges improper conduct by Patton during her employment at Smith, Inc.  Mrs. Hosey testified that Patton was continuously making inappropriate comments during the Rubicon job, which continued through March 2004.  Accordingly, acts of harassment based on conduct that occurred earlier in her employment are actionable.

Defendants' Motion for Summary Judgment on Mrs. Hosey's Title VII claims as untimely is DENIED, subject to re-urging and further briefing if Mrs. Hosey asserts additional claims based on discrete acts of discrimination.

### 2.    Claims Against Patton

Mrs. Hosey asserts claims under Title VII against both Smith, Inc. and Patton individually.  Defendants move for summary judgment on all Title VII claims against Patton because he is not an "employer."

The Court agrees.  As the Fifth Circuit has explained,

Title VII . . . makes it "an unlawful employment practice for an employer . . .  to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42

9

U.S.C. § 2000e-2(a)(1). While Title VII defines the term employer to include "any agent" of an employer, id. § 2000e(b), this circuit does not interpret the statute as imposing individual liability for such a claim. See Pfau v. Reed, 125 F.3d 927, 935-36 (5th Cir. 1997). . .  Congress's purpose in extending the definition of an employer to encompass an agent in Section 2000e(b) was simply to incorporate respondeat superior liability into Title VII.  Grant v. Lone Star Co., 21 F.3d 649, 652 (5th Cir. 1994); see also  Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993). Thus, a Title VII suit against an employee is actually a suit against the corporation.

Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999); see also Ackel v. National Communications, Inc., 339 F.3d 376, 382 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities. . . Accordingly, the district court properly dismissed the claims against Hardesty and Hamilton.").

Accordingly, Defendants' Motion for Summary Judgment on Mrs. Hosey's Title VII claims against Patton is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

### 3.    Sexual Harassment

Mrs. Hosey asserts that she was subjected to a sexually hostile work environment and quid pro quo sexual harassment by Patton while she was employed at Smith, Inc.

Under either theory of sexual harassment, a plaintiff must establish that (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action.  See Green v. Administrators of the Tulane Educational Fund, 284 F.3d 642, 655 (5th Cir. 2002); Woods v. Delta Beverage Group, Inc., 274 F.3d 295, 298-99 (5th Cir. 2001); see also Frank v. Xerox Corp., 347 F.3d 130 (5th Cir. 2003).  If the "the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim," then the

plaintiff need not establish the fifth element.  Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353-54 (5th Cir. 2001).  Since Patton was clearly a supervisor, Mrs. Hosey need only show the first four elements.

With regard to the fourth prong, under a quid pro quo theory, the plaintiff relies upon a tangible employment action to show that the harassment altered a term or condition of her employment.  Thompson v. Naphcare, Inc., 117 Fed. Appx. 317, 321 (5th Cir. 2004).  The plaintiff must also show some nexus between the alleged harassment and the tangible employment action.  See La Day v. Catalyst Technology, Inc., 302 F.3d 474, 482 (5th Cir. 2002) ("[B]ecause [plaintiff] failed to demonstrate the necessary causal 'nexus' between his refusal of [his supervisor's] alleged advances and the claimed adverse actions," plaintiff could not survive summary judgment.) (citing See Casiano v. AT&T Corp., 213 F.3d 278, 283 (5th Cir. 2000)).

Under a hostile work environment theory, the plaintiff is not required to show that she suffered a tangible employment action, but that the conduct of the alleged harasser was severe **or** pervasive enough to alter a term or condition of her employment.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752 (1998); see also Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 434-35 (5th Cir. 2005) (A plaintiff need only show that conduct was severe or pervasive, not both).  A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable."  Frank, 347 F.3d at 138 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993)).  Whether an environment is objectively hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.

11

<u>Harris</u>, 510 U.S. at 21-22.  A "recurring point in [Supreme Court] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 270-71 (2001) (internal quotes omitted).

### a. Quid Pro Quo

Defendants move for summary judgment on Mrs. Hosey's claim of quid pro quo harassment because the evidence fails to show that Patton "made advances to extract sexual favors in order that she receive some economic benefit." [Doc. No. 62, p. 12].

Mrs. Hosey's response mixes the standard for hostile work environment, quid pro quo, and retaliation.  Viewing it in the most liberal light, the Court understands Mrs. Hosey's argument to be that she suffered a tangible employment action because she was terminated after she rejected Patton's sexual advances.

Having fully reviewed the deposition testimony and other evidence in this matter, the Court finds that Mrs. Hosey has failed to state a claim for quid pro quo harassment as a matter of law because she has failed to show the required nexus between her suspension and termination and the alleged harassment.  Mrs. Hosey reported Patton's conduct only to her then-boyfriend and supervisor Lamar Hosey.  Lamar Hosey denies that he told any member of management about her allegations, and Mrs. Hosey has provided no evidence contradicting his testimony. Further, Smith, Inc.'s Secretary-Treasurer, Harrison, testified that she alone made the decision to terminate Mrs. Hosey without any input from Patton.  <u>See Casiano</u>, 213 F.3d at 284-85 (Plaintiff could not prevail on a claim of quid pro quo harassment when he was denied access to a training program, not by his alleged harasser, but by another manager).  Mrs. Hosey suspects that Patton

12

was involved because she was told by the Safety Manager Shively that the decision to terminate her came from "higher up," but suspicion, speculation, and subjective beliefs do not establish a genuinely contested issue of material fact for trial.[8]  See Burton v. Buckner Children and Family Services, Inc., 104 Fed.Appx. 394, 395 (5th Cir. 2004) (citing Michaels v. Avitech, Inc., 202 F.3d 746, 754-55 (5th Cir.2000)).  His alleged statement could just have easily referred to Harrison, who is not only the Secretary-Treasurer of the company, but the daughter of the founder.

Accordingly, Defendants' Motion for Summary Judgment on Mrs. Hosey's quid pro quo sexual harassment claim is GRANTED, and this claim is DISMISSED WITH PREJUDICE.[9]

### b.  Hostile Work Environment

Defendants also move for summary judgment on Mrs. Hosey's claim that she was subjected to a hostile work environment.  Defendants contend that Mrs. Hosey cannot establish that Patton's alleged conduct was severe or pervasive.

Mrs. Hosey testified as to the following acts of harassment by Patton:

- While Mrs. Hosey was in the tool trailer, Patton propped his legs across her path, so that Mrs. Hosey had to step over him.  As she did, Patton put his leg between her legs and said, "I just wanted to see what kind of heat you had around your pussy."

- Mrs. Hosey bent over to clean up welding rod butts.  When she raised up, Patton was behind her.  He put his arm around her and said, "you need to start wearing looser clothes or quit bending over in front of me because you make my dick hard."

_____

[8]Mrs. Hosey also testified that co-workers saw or knew of Patton's conduct toward her, but there is no evidence that these co-workers reported the conduct to any decisionmaker in Mrs. Hosey's suspension and/or termination.

[9]To the extent that Mrs. Hosey contends that she suffered quid pro quo sexual harassment because Patton told her that she had to have sex with him to get a pay raise, Mrs. Hosey's claim also fails.  It is undisputed that she was given a pay raise.

- Patton told Mrs. Hosey that if she wanted raises, she would have to have sex with him.[10]

- While on a job at Austin White Lime, Patton was operating a crane and told Mrs. Hosey that if she wanted to learn how to operate it, she could "come sit up here in [his] lap and [they would] discuss what pops up first."[11]

- After Christmas, Mrs. Hosey returned to work at Rubicon wearing an engagement ring from Lamar Hosey.  Patton saw the ring, grabbed her hand, and said "what the fuck is that?"  When Mrs. Hosey replied that it was an engagement ring, Patton told her that it was "some stupid fucking shit" to do when she could "get further along out here if [she was] single."

- Mrs. Hosey alleges that Patton made repeated remarks about her "fine ass" and "hot pussy," and other similar kinds of remarks.

- A number of times on the Rubicon job, Patton walked up behind Mrs. Hosey and "pop[ped] her" on the buttocks and brushed up against her "in a way that [she] could feel his groins."

The Court finds that Mrs. Hosey has alleged conduct by Patton during a nine-month period,[12] which, if believed by the jury, is sufficiently severe or pervasive as to alter a term or condition of her employment.  This case is analogous to Harvill v. Westward Communications, L.L.C., 433 F.3d 428 (5th Cir. 2005).  In Harvill, the Fifth Circuit reversed a district court's granting of summary judgment to an employer where the evidence showed that, during a

---

[10]As noted by Defendants' attorney, Mrs. Hosey originally said that Patton told her she would have to "fuck him," but then later said that those were not his specific words.  Rather, she inferred his meaning from the words he used.  Cf. [Doc. No. 62, Exh. Deposition of Janice Hosey, p. 166 to pp. 169-70.

[11]Defendants contend that Mrs. Hosey's allegations of harassment were limited to the Rubicon job.  However, Mrs. Hosey identified at least this one earlier instance, which the Court can consider as part of Patton's alleged continuing pattern of behavior.

[12]Mrs. Hosey was originally employed by Smith, Inc. in 2002, but testified that Patton was only present once at the job site in Hodge, Louisiana, and was never present at a second job site in Smackover, Arkansas. [Doc. No. 62, Deposition of Janice Hosey, pp. 58-62].  She returned to work for Smith, Inc. in June 2003.  While most of Patton's conduct allegedly occurred between December 2003 and March 2004, Mrs. Hosey has also alleged some earlier harassment.

seven-month period, a co-worker made comments about the plaintiff's sex life and abilities in

bed, grabbed the plaintiff and kissed her on the cheek, popped rubber bands at her breasts,

fondled her breasts and/or patted her on her buttocks perhaps as often as once a week, and came

up behind her and rubbed his body against her.  See also McKinnis v. Crescent Guardian, Inc.,

No. 05-30728, 2006 WL 1880364 (5th Cir. July 7, 2006) (Plaintiff's allegations raised a genuine

issue of fact for trial where she testified that, during a two-month period, her supervisor "was

harrassing [her]."  He allegedly " kept coming in the post where [she] was," asked her "for hugs

and kisses," touched her on the breast and thigh, and got co-workers to retaliate against her).

This case involves the kind of intimate touching, accompanied by clearly inappropriate remarks,

which is sufficient to raise a genuine issue of material fact for trial.

Accordingly, Defendants' Motion for Summary Judgment on Mrs. Hosey's hostile work

environment claim is DENIED.

### 4.  Gender Discrimination

Defendants also move for summary judgment on Mrs. Hosey's claim of gender

discrimination under a disparate treatment theory.

To prevail on a claim of gender discrimination based on circumstantial evidence, a

plaintiff must show that "(1) she was a member of a protected class, (2) she was qualified for the

position she lost, (3) she suffered an adverse employment action, and (4) that others similarly

situated were more favorably treated."  Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206

(5th Cir. 1998). The burden then shifts to the employer to articulate a legitimate,

non-discriminatory reason for the employment action.  Finally, if the employer meets its burden

of production, the plaintiff must show that the reason is merely pretext for discrimination.

At least for purposes of summary judgment, the Court finds that Mrs. Hosey can meet the first three prongs: she is a woman who was qualified to perform as a Fire Watch, and she was both suspended and then terminated.[13]  The dispute focuses on the fourth prong, whether male employees similarly situated were more favorably treated.  To demonstrate that an employee outside the protected class is "similarly situated," a plaintiff must show that the supposed misconduct of both employees was "nearly identical."  Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001).

Mrs. Hosey contends that male employees similarly situated to her who failed a drug test for the first time were allowed to return to work after serving a thirty-day suspension.  While Mrs. Hosey did not specifically identify any comparators in her memorandum, she did in her deposition.  Mrs. Hosey testified that at least three male employees–Adam Williams, Daniel Powell, and Josh Kimrey–failed drug tests, served thirty-day suspensions, and then were allowed to return to work.  She also testified that Shively told her that she could return to work after thirty days and a clean drug test.  Therefore, for purposes of summary judgment, the Court will assume that Mrs. Hosey can meet her prima facie burden.

The Court also finds that Defendants have met their burden of production by showing that there was a legitimate, non-discriminatory reason for Mrs. Hosey's termination.  Harrison testified that she did not bring Mrs. Hosey back to work after her 30-day suspension because Mrs. Hosey "faked" the drug test.  Both Mrs. Hosey and Harrison testified that Hudson, the lab

---

[13]The Court rejects Defendants' argument that Mrs. Hosey did not suffer an adverse employment action because she "test[ed] positive for illegal drug usage and admit[ted] such use in violation of [Smith, Inc.'s] rules." [Doc. No. 62, p. 14].  There is no doubt under relevant case law that Mrs. Hosey suffered an adverse employment action; Defendants' argument goes to its burden of production.

technician from Kroll Laboratories, said that Mrs. Hosey's first sample was not the correct temperature and required Mrs. Hosey to give a second sample.  Harrison's belief, whether correct or not, that Mrs. Hosey tried to fake her drug test is a legitimate, non-discriminatory reason for her termination.  Therefore, her gender discrimination claim can proceed to trial only if she can show that the reason was pretextual.

Mrs. Hosey's claim fails at this stage.  She has offered no evidence to contradict or even cast doubt on Harrison's testimony that she based her decision solely on the alleged attempt to fake the drug test.  Harrison testified that she is not involved in employment decisions affecting male employees who fail a drug test.  She is only called in when there is the possibility of a female employee being disciplined.

Additionally, Mrs. Hosey has offered no evidence to show that Harrison, the decisionmaker, or, even Shively, who set up the drug test, had any animus against her on the basis of her gender.

Accordingly, Defendants' Motion for Summary Judgment is GRANTED on Mrs. Hosey's gender discrimination claim, and that claim is DISMISSED WITH PREJUDICE.

### 5.  Retaliation

Defendants also move for summary judgment on Mrs. Hosey's claim of retaliation under Title VII.

Title VII's anti-retaliation provides as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ⋯ because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

17

42 U.S.C. § 2000e-3(a).

To support a claim of retaliation, a plaintiff much show that (1) she engaged in activity protected by Title VII; (2) the employer took adverse employment action against the her; and (3) a causal connection exists between that protected activity and the adverse employment action.  See Mattern v. Eastman Kodak Co., 104 F.3d 702, 705 (5th Cir. 1997).  In a retaliation case, the Supreme Court has instructed that a plaintiff has suffered adverse employment action if she can show "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 --U.S.-- (2006) (internal quotation marks omitted) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1217-1218 (D.C. Cir. 2006) (other quotation omitted)).

Mrs. Hosey cannot meet her burden.  She did not participate in any "investigation, proceeding or hearing" prior to her termination by Smith, Inc.  Therefore, she can only show that she engaged in protected activity by reporting or somehow otherwise opposing Patton's alleged conduct.  However, the only person Mrs. Hosey reported Patton's sexual harassment to was Lamar Hosey, her then-boyfriend, now husband.  Although Lamar Hosey was a supervisor for Smith, Inc., it is questionable in the Court's mind whether such a report to her boyfriend is sufficient to constitute protected activity.

Even assuming arguendo that this report was sufficient, however, Lamar Hosey unequivocally testified that he did not relay her report of sexual harassment to Patton or to any decisionmaker at Smith, Inc. prior to Mrs. Hosey's suspension or termination.  Mrs. Hosey has also presented no evidence to dispute Harrison's testimony that she had no knowledge of Patton's alleged sexual harassment at the time of her decision to terminate Mrs. Hosey.  Thus, Mrs. Hosey

18

cannot establish a causal connection between her complaint of sexual harassment to her boyfriend-supervisor and her subsequent suspension and termination.

Accordingly, Defendants' Motion for Summary Judgment on Mrs. Hosey's retaliation claim is GRANTED, and Mrs. Hosey's claim of retaliation is DISMISSED WITH PREJUDICE.

### C.     Intentional Infliction of Emotional Distress

Defendants also move for summary judgment on Mrs. Hosey's claim of intentional infliction of emotional distress.

A claim of intentional infliction of emotional distress is brought under Louisiana Civil Code article 2315, which is subject to a one-year prescriptive period.

This cause of action was first recognized in White v. Monsanto, 585 So.2d 1205 (La. 1991). In that case, the Louisiana Supreme Court explained:

> One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> Thus, in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

Id. at 1209-10 (internal citations omitted). The mere fact of termination alone, even if for unlawful reasons, is not sufficient to constitute the type of outrageous conduct required for a finding of liability. See, e.g., Wilson v. Monarch Paper Co., 939 F.2d 1138, 1144 (5th Cir. 1991) ("We agree . . . that more is required to prove intentional infliction of emotional distress than the usual ADEA claim.") (quoting Dean v. Ford Motor Co., 885 F.2d 300 (5th Cir. 1989)).

First, the Court agrees with Defendants that, because this action has a one-year prescriptive period, Mrs. Hosey cannot recover on the basis of any conduct occurring prior to December 20, 2003.

Defendants also contend that the allegations raised by Mrs. Hosey are not sufficiently outrageous as to permit her recovery.  In the alternative, they argue that, even if the conduct was outrageous, Mrs. Hosey is unable to show that she suffered severe emotional distress.

Mrs. Hosey responds that she has raised a genuine issue of material fact as to whether the conduct of Patton[14] or Smith, Inc. during the relevant time period was sufficiently outrageous. She does not respond to Defendants' alternative argument.

The Court finds that Mrs. Hosey has met her burden at the summary judgment stage as to whether the conduct of Patton and Smith, Inc. is sufficiently outrageous.  Even if the most outrageous of Patton's conduct occurred prior to December 20, 2003 (which is not clear to the Court), then that conduct may be admissible as background for the conduct in which he did engage during the relevant time period.  While the Court offers no opinion as to whether Mrs. Hosey can meet her burden at trial, the allegations are sufficient to warrant trial.  See id. at 1209-1210 (A supervisor's harassment of a subordinate is more apt to rise to the level of intentional infliction of emotional distress than comparable harassment by a co-worker).

Further, Mrs. Hosey has raised a genuine issue of material fact for trial on Smith, Inc.'s vicarious liability for Patton's conduct.  Smith, Inc. had no sexual harassment policy during Mrs. Hosey's employment.  Patton was the top supervisor at the job sites and, if Mrs. Hosey's

---

[14]Although the Court has granted Defendants' Motion for Summary Judgment on the Title VII claims against Patton individually, he remains a defendant as to this state law claim.

allegations are believed, used his job to facilitate his harassment of women on Smith, Inc.'s time

and at its work sites.  Mrs. Hosey reported Patton's conduct to Lamar Hosey, her then-supervisor

and boyfriend.  Mrs. Hosey also testified that another supervisor, Oscar Hosey, was aware of

Patton's conduct.  Both Mrs. Hosey and Lamar Hosey provided testimony indicating that

Patton's conduct toward female employees in general, as well as against Mrs. Hosey specifically,

was well-known among Mrs. Hosey's co-workers and some of the supervisors.  The Court finds

that, based on the testimony, there is a genuine issue of material fact for trial as to whether Smith,

Inc. should be held vicariously liable for Patton's conduct under state tort law.  See Barrios v.

Kody Marine, Inc., 2000 WL 775067 (E.D. La. June 14, 2000);  Ferrell v. Shell Oil Co., 1996

WL 75586 (E.D. La. Feb. 16, 1996).

      The Court also finds that Mrs. Hosey has raised a genuine issue of material fact as to

whether she suffered severe emotional distress.  While Mrs. Hosey admits that she did not seek

psychiatric treatment or counseling, she testified that she went to her general practitioner in

Mississippi "over stress of all of this and everything," and he prescribed her Xanax because she

thought she "was losing [her] mind." [Doc. No. 62, Deposition of Janice Hosey, p. 264].

Defendants note that Mrs. Hosey apparently sought the same type of treatment when she was

divorcing from her husband, but that fact does not negate a showing of severe emotional distress.

In fact, it may support that she suffered the same type of severe emotional distress she suffered

when divorcing a husband she described as a drug addict.  This is particularly so when she

testified that she was trying "to deal with [the stress] mostly on [her] own because [she] didn't

want to make [herself] look like" she had "gone beyond sanity." [Doc. No. 62, Deposition of

Janice Hosey, p. 265].  She also explained that she does not like going to doctors and only goes if

she's "dying or just can't handle something no longer." [Doc. No. 62, Deposition of Janice

Hosey, p. 267].

Mrs. Hosey's testimony about the stress she allegedly suffered when coupled with her

medical treatment is sufficient to raise a genuine issue of material fact for trial.  Accordingly,

Defendants' Motion for Summary Judgment as to the intentional infliction of emotional distress

claim against Defendants is DENIED.

### D.    Breach of Contract

Defendants also move for summary judgment on Mrs. Hosey's breach of contract claim.

Under Louisiana law, employment "contracts" are of two types:  a contract for a fixed

time, see La. Civ. Code art. 2746, and the contract of a employee terminable at the will of the

parties, see La. Civ. Code art. 2024, 2747.[15]  If the employment is terminable at the will of either

the employer or the employee, there is no action for breach of contract.  See  Brannan v. Wyeth

Labs., 526 So.2d 1101, 1104 (La. 1988).[16]  Mrs. Hosey, who was an employee at will, has no

breach of contract claim based on her suspension or termination by Smith, Inc.

To the extent that she is basing her breach of contract on Smith, Inc.'s alleged failure to

adhere to prior policy, her claim also fails.  Mrs. Hosey argues that she was terminated for a first

_____

[15]There is some suggestion in the case law that an employee who has given some "valuable
consideration" other than performance of the work may be able to recover for breach of a lifetime
contract.  See Deus v. Allstate Ins. Co., 15 F.3d 506, 517-18 (5th Cir. 1994).  However, Mrs.
Hosey makes no allegation that she believed she was employed for life or that she offered any
special consideration for lifetime employment.

[16]It appears from Mrs. Hosey's complaint that she is also attempting to assert a claim for
wrongful discharge.  Although Defendants did not move for summary judgment on this claim,
there is no general tort action for wrongful termination of employment under Louisiana law.  See
Wusthoff v. Bally's Casino Lakeshore Resort, Inc., 709 So.2d 913 (La. App. 4 Cir. 1998).

failed drug test, which was inconsistent with Smith, Inc.'s established policy of allowing employees who fail a drug test for the first time to return to work after a thirty-day suspension and a clean drug test.  Louisiana jurisprudence does not have a per se rule against finding a breach of contract based upon an employee manual or personnel policies; instead, the courts have examined the manuals or policies on a case-by-case basis.  See Wallace v. Shreve Memorial Library, 79 F.3d 427 (5th Cir. 1996).   However, an examination of Mrs. Hosey's claim makes clear that she does not rely on a handbook, manual, or written policies provided to employees, but the type of "unilateral expression of company policies and procedures" which does not support a breach of contract claim.  See Leger v. Tyson Foods, Inc., 670 So.2d 397, 402 (La. App. 3 Cir. 1996).

Accordingly, Defendants' Motion for Summary Judgment is GRANTED, and Mrs. Hosey's claim for breach of contract against Smith, Inc. is DISMISSED WITH PREJUDICE.[17]

### E.  Punitive Damages

Defendants also move for summary judgment on Mrs. Hosey's claim for punitive damages under state and federal law.

Louisiana prohibits punitive damages "unless expressly authorized by statute" or by contract.  International Harvester Credit Corp. v. Seale, 518 So.2d 1039, 1041 (La. 1988).  No Louisiana statute authorizes punitive damages for intentional infliction of emotional distress, Mrs. Hosey's remaining state law claim.  Accordingly, Defendants' Motion for Summary Judgment on any claim for punitive damages under state law is GRANTED.

---

[17]It does not appear that Mrs. Hosey is asserting a breach of contract claim against Patton, and the Court cannot conceive of a basis for such a claim.

23

A plaintiff who prevails on her claim under Title VII may recover punitive damages if she makes the required showing. The Fifth Circuit has set forth the standard to be applied when an employer is alleged to be liable for punitive damages based on the actions of a managerial employee:

> A plaintiff may recover punitive damages if the defendant acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The availability of punitive damages turns on the defendant's state of mind, not the nature of the defendant's egregious conduct. Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999). The employer "must at least discriminate in the face of a perceived risk that its actions will violate" the ADA. Id. at 536, 119 S.Ct. at 2125. Moreover, the plaintiff must show that the "malfeasing agent served in a 'managerial capacity' and committed the wrong while 'acting in the scope of employment.'" Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 405 (5th Cir.2000) (citing Kolstad, 527 U.S. at 541, 119 S.Ct. at 2127). However, under the good-faith exception, "an employer may not be vicariously liable for the discriminatory employment decision of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." Id. (citing Kolstad, 527 U.S. at 545, 119 S.Ct. at 2129) (internal quotation marks omitted).

E.E.O.C. v. E.I. Du Pont de Nemours & Co., 480 F.3d 724, 732 (5th Cir. 2007).

For the same reasons the Court has concluded that there is a triable issue on Smith, Inc.'s vicarious liability under state tort law, the Court also finds that there is a triable issue as to punitive damages. There was no sexual harassment policy in place at Smith, Inc. There is no evidence of any sexual harassment training. There is no evidence that supervisors had any knowledge, instruction, or procedures to follow when presented with a claim of sexual harassment. There is no evidence that Smith, Inc. made any effort at all to comply with Title VII's prohibition against sexual harassment.

Under these circumstances, the Court cannot conclude as a matter of law that Mrs. Hosey

24

is barred from recovering punitive damages if she prevails on her Title VII sexual harassment claim.  Defendants' Motion for Summary Judgment on Mrs. Hosey's claim for punitive damages under Title VII is DENIED.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 38] is GRANTED IN PART and DENIED IN PART.  Defendants' Motion for Summary Judgment is GRANTED on Mrs. Hosey's Title VII claims against Patton individually; her Title VII claims against Smith, Inc. for gender discrimination, quid pro quo sexual harassment, and retaliation; her breach of contract claim against Smith, Inc.; and any claim for punitive damages under state law.  Defendants' Motion for Summary Judgment is DENIED on Mrs. Hosey's Title VII claim against Smith, Inc. for sexual harassment under a hostile work environment theory and for punitive damages and her state law claim of intentional infliction of emotional distress against Patton and Smith, Inc.

MONROE, LOUISIANA, this the 6th day of September, 2007.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**